UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE J. BRZEZINSKI,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

Case No. 1:16-CV-522

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age on his date last insured, and fifty-five years old on the date of the ALJ's decision. (PageID.34, 73.) He obtained a high school education and a certificate in labor law, and was previously employed as a construction worker and as a labor union business manager. (PageID.74, 91.) Plaintiff applied for benefits on December 9, 2013, alleging that he had been disabled since January 13, 2011, due to an arrhythmia-atrial fibrillation heart condition, diabetes, sleep apnea, and a bad right knee. (PageID.97, 149–150.) Plaintiff's application was denied on February 21, 2014, after which time he requested a hearing before an ALJ.

(PageID.108–113.) On February 10, 2015, Plaintiff appeared with his counsel before ALJ Thomas L. Walters with testimony offered by Plaintiff and a vocational expert (VE). (PageID.69–94.) In an unfavorable decision dated February 18, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.34–46.) On March 22, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–30.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 2013. (PageID.97.) To be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Walters determined Plaintiff's claim failed at step four. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date and his date last insured. (PageID.39.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) atrial fibrillation; (2) diabetes mellitus; (3) obstructive sleep apnea; (4) hypertension; and (5) obesity. (PageID.39.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.40.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments, through his date last insured, to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except he can perform occasional bending, turning, crouching, and stooping. He cannot perform climbing, crawling, or kneeling. Walking is limited to less than two blocks and he cannot work around moving machinery or unprotected heights. He is likely to be on task at least 90% of the day.

(PageID.40.) Continuing with the fourth step, the ALJ found that Plaintiff was capable of

performing his past relevant work as a labor union business manager as it was generally performed within the national economy. (PageID.43.) The ALJ concluded that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. In doing so, the ALJ relied in part on the testimony from the VE at the administrative hearing.[2] (PageID.91–93.)

Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 13, 2011, the alleged onset date, through December 31, 2013, his date last insured. (PageID.43.)

## DISCUSSION

### 1. The ALJ's RFC Determination is Supported by Substantial Evidence.

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014.); *see also* SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996) (stating a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regulation and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that the ALJ's RFC determination fails to account for the limitations he experiences from several ailments.

The ailments listed in Plaintiff's heading includes impairments that the ALJ found

---

[2] A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Sec'y of Health & Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir. 1991); *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 421 (D. Del. 2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform her past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"); *see, e.g.*, *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

were severe (e.g., sleep apnea, hypertension), those that were not severe (e.g., diarrhea), as well as alleged impairments that may be symptoms of other impairments (e.g., hypoxemia, a condition in which oxygen levels in the blood are reduced and is often a complication present in sleep apnea. *Sleep Apnea*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/sleep-apnea/basics/complications/con-20020286 (last visited Mar. 31, 2017)). Plaintiff claims the ALJ failed to consider all these impairments on his ability to work. (PageID.302.) But the ALJ expressly noted his obligation to consider all Plaintiff's impairments, including non-severe impairments, in crafting Plaintiff's RFC. (PageID.38.) Later, he noted he had considered "all symptoms" at step four. (PageID.40.) Plaintiff has not demonstrated how the ALJ erred on this point. Moreover, he has not established that these impairments impose limitations greater than those accounted for in the RFC.

One reason why Plaintiff's claim is unsuccessful is that he fails to point the Court to records in support of his position. Indeed, while Plaintiff references his hypertension, hypertriglyceridemia, hyperlipidemia, and diarrhea in the heading of his claim of error, as well as in the closing sentence of this discussion, he provides no further discussion of these impairments in this section of his brief, much less point the court to records indicating these conditions impose limitations inconsistent with his RFC. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived.").

6

Regarding the remaining impairments, Plaintiff claims his sleep apnea and hypoxemia cause him to be fatigued, and that motor vehicle and work related injuries can happen due to sleepiness. (PageID.302.) He notes that he takes naps during the day. (PageID.303.) Contrary to Plaintiff's assertion, Plaintiff's sleep apnea and complaints of fatigue were thoroughly evaluated in the RFC. (PageID.41.) Furthermore, the record does not support Plaintiff's contention that these impairments limit him to an extent greater than the extreme restrictions contained in the RFC.

Plaintiff had a sleep study on January 8, 2013, and was diagnosed with severe sleep apnea. A repeated study was ordered. (PageID.222.) On March 19, 2013, Plaintiff scheduled a visit to be fitted with a CPAP machine to treat his sleep apnea. (PageID.210.) Plaintiff appears to have undergone another test on April 4, 2013, after which time he was prescribed a CPAP machine. (PageID.206.) On June 25, 2013, Dr. Chandra Gera noted that Plaintiff had severe sleep apnea, but that it was under good control with Plaintiff's CPAP machine. It was noted he tolerated the machine fairly well, and reported that it makes him feel better and he does not feel sleepy in the day time. (PageID.205.) Later, however, on December 17, 2013, Plaintiff reported that he "gets tired more easily especially in cold weather." (PageID.242.) But such a vague statement does nothing to indicate that Plaintiff is in any way more limited than as accounted for in his RFC.

Regarding his cardiomyopathy, Plaintiff points to an April 4, 2013, treatment note containing a diagnosis of mild cardiomyopathy. (PageID.214.) Plaintiff also references a December 14, 2012, treatment note in which diagnosed him with shortness of breath. (PageID.234.) But "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489

(6th Cir. 1988)). The record does indicate Plaintiff's heart condition rendered him incapable of performing sedentary work. Indeed on several occasions it was noted Plaintiff's arrythmia-atrial fibrillation was "asymptomatic." (PageID.202, 212.)

In support of his RFC determination, the ALJ noted Plaintiff reported being able to prepare meals, do laundry, wash dishes, mow the yard with a riding mower, use a snow blower, go shopping, and walk 150 to 200 feet. (PageID.42.) The ALJ also gave considerable weight to agency physician Russell Holmes, who found Plaintiff could perform a reduced range of sedentary work. (PageID.102.) All this provides substantial evidence in support of the ALJ's RFC determination. While the Court does not doubt Plaintiff is limited due to his sleep apnea, heart condition, and other impairments, such impairments are adequately accounted for in his RFC. Plaintiff's first claim of error is denied.

### 2. The ALJ Properly Evaluated Plaintiff's Obesity

Next, Plaintiff contends the ALJ failed to consider the effects of his obesity on his ability to work. (PageID.304.) The effect of obesity on a claimant's ability to work must be specifically considered. *See* SSR 02–1P, 2002 WL 34686281 (Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) ("an ALJ must 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation'") (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

The ALJ, however, is not obligated to employ any "particular mode of analysis" when assessing the impact of a claimant's obesity. *See Shilo*, 600 F. App'x at 959. Nevertheless, the ALJ must do more than merely "mention the fact of obesity in passing." *Id.* As the Sixth Circuit recently reiterated:

> Obesity... must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *1–2). The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity 'commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' For example, 'someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.' The ALJ also must specifically take into account 'the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment,' and consider how 'fatigue may affect the individual' s physical and mental ability to sustain work activity'- especially in 'cases involving sleep apnea.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *3–6). But SSR 02–1p cautions that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record." SSR 02–1p, 2002 WL 3468281 at *6. In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinions and evidence to show specifically how his obesity exacerbated his other impairments, or interacted with them, to render him incapable of all suitable work. Plaintiff has not done so here.

Plaintiff argues that the ALJ's discussion fails to explain how his obesity "effected his remaining ability to perform work" and accordingly "the court is unable to review and judge

9

whether the ALJ correctly considered obesity and it's [sic] effects on" his RFC. (PageID.305.) But a review of the ALJ's decision demonstrates that the ALJ provided an extensive discussion of Plaintiff's obesity. At step two, the ALJ found it was a severe impairment. At step three, the ALJ stated he had considered Plaintiff's obesity on the effect of his impairments. (PageID.40.) At step four, the ALJ provided a thorough and accurate recitation of the medical record, including those treatment notes mentioning Plaintiff's obesity. The ALJ then concluded that he had "considered the potential impact of obesity in causing or contributing to co-existing impairments as required by [SSR] 02-1p. However there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." (PageID.43.) It is this statement that sets this case apart from the case Plaintiff claims is analogous, *Sleight v. Comm'r of Soc. Sec.*, 896 F. Supp. 2d 622, 632 (E.D. Mich. 2012). In that case the ALJ only mentioned the claimant's obesity in passing by providing a summary of Plaintiff's treatment notes that discussed the claimant's obesity. While the court found the ALJ's summary demonstrated that the ALJ was cognizant of the claimant's obesity, it did not show that the ALJ had considered the claimant's obesity. *Id.* at 632-633. Here the ALJ's discussion is much more extensive, and specifically states that Plaintiff's obesity was *considered* in evaluating his RFC. The ALJ found, however, that Plaintiff's obesity did not limit him beyond those restrictions contained in the RFC. Plaintiff has not demonstrated otherwise.[3]

---

[3] Plaintiff also argues this case must be reversed because the ALJ erroneously found no medical documentation of sleep apnea. (PageID.306.) This contention is patently meritless and fails upon even a cursory review of the ALJ's decision. The ALJ found sleep apnea to be severe at step two. The ALJ noted that to qualify as a medically determinable impairment, the impairment must be supported by objective clinical and diagnostic findings. (PageID.39.) That the ALJ found Plaintiff's sleep apnea to be a severe impairment clearly indicates he found the impairment was supported by medical documentation. The ALJ also discussed this impairment in the RFC, and referenced sleep studies that diagnosed Plaintiff with sleep apnea. (PageID.41.) Plaintiff's contention is therefore rejected.

### 3. The ALJ's Credibility Analysis.[4]

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than the ALJ recognized. He stated that his arrhythmia-atrial fibrillation caused him to feel tired and dizzy. He would sleep twelve hours a day. (PageID.77.) He has side effects from his medication that causes him to have diarrhea roughly three to four days a week. On those days, he is indisposed five to six times, each for a period of thirty minutes. (PageID.78.) He thought he could stand for twenty minutes at once and walk for two city blocks. (PageID.80.) He could do household chores for fifteen to twenty minutes before needing a break, at which point he would lay down on a recliner for twenty to thirty minutes. (PageID.83–84.) In total, he would spend six to eight hours a day on the recliner. (PageID.84.) He felt like he could not return to his job as a business manager for the union because he would retain water in his feet if he was sitting down for too long. (PageID.89.) The ALJ began his credibility discussion by stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(PageID.42.) Plaintiff claims the ALJ erred in making this finding.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other

---

[4] Plaintiff presents this credibility argument as his fourth claim of error. The Court will consider this argument before his third argument, however, as the ALJ's credibility analysis has some bearing on Plaintiff's claim that the ALJ's hypothetical questions to the VE were deficient.

symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully

credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff begins his credibility argument by providing a lengthy excerpt from a seventh circuit case, *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), that critiques the use of boilerplate language, such as that quoted above, in discounting a claimant's credibility. (PageID.308–309.) As the Sixth Circuit has recognized, however, the "chief concern with the popularity [of boilerplate credibility language] is the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) (emphasis in original). Accordingly, the Sixth Circuit has found no violation of Social Security policy when the use of boilerplate credibility language is followed by a "thorough explanation elsewhere of [the ALJ's] reasons for doubting [the claimant's] account." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Here, the ALJ did not solely discount Plaintiff's credibility using the above language. Rather, the ALJ provided the following discussion:

> The undersigned finds that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. Claimant indicated that she [sic] is primarily limited [due] to his atrial fibrillation, diabetes, and hypertension. The claimant said he stopped working in 2008 because the union was merged and he lost his job, not due to his disability. He has not worked anywhere else because no [one] would hire him as he was a union representative, however, the undersigned notes that the inability to secure employment is not the same as the inability to perform basic work activities if hire.

> Office notes show the claimant continues to be obese and has been somewhat noncompliant in his diabetic diet and he has not lost much weight although his doctors recommended weight loss. The evidence does not fully support claimant's contentions as to the magnitude of his symptomatology and dysfunction, including his expressed level of fatigue, pain, dizziness, and need to rest for extended intervals. No physician imposed a work preclusive limitation on claimant's functioning, or opined that he was disabled. Claimant's alleged impairments are not of a scale to reasonably conclude that he is prohibited from performing work activity within the confines of the residual functional capacity adopted.

(PageID.43.) As this discussion makes plain, the ALJ articulated several specific reasons for finding Plaintiff's allegations were not credible, and thus fulfilled his obligation to "all of the evidence in the case record." SSR 96-7p, 1996 WL 374186 at *5 (July 2, 1996). Plaintiff contends that the ALJ could not reference his activities of daily living in his credibility discussion. (PageID.310–311.) But agency regulations clearly allow an ALJ to consider a claimant's daily activities in assessing the credibility of the claimant's statements. SSR 96-7p, 1996 WL 374186 at *3 (July 2, 1996.) In any event, it does not appear the ALJ referenced Plaintiff's activities of daily living when discounting his credibility in this case. Plaintiff alleges no other error in regards to the reasons provided by the ALJ for discounting his credibility.

Finally, Plaintiff contends the ALJ should have discussed his medication side effects in connection to his credibility. Allegations of side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where claimant testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of Health & Human Servs.*, No. 91–1925, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's

side-effects must be supported by objective medical evidence"). Here, Plaintiff claims his medications lead to frequent diarrhea, but he depends only on his testimony in support. The record is devoid of any complaints regarding this side effect. To the contrary, while Plaintiff complained he experiences side effects from Xarelto (PageID.77–78), a March 18, 2013, treatment note from Dr. Daryl Melvin indicated he was tolerating the Xarelto well. (PageID.212.) As such Plaintiff has not demonstrated error here.

For all the above reasons, Plaintiff's claim of error is denied.

### 4. The ALJ's Hypothetical to the Vocational Expert.

Plaintiff also argues that the ALJ's finding at step four of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that Plaintiff was capable of returning to his past relevant work. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert.

Plaintiff's argument here is nothing more than an assertion the ALJ was required to include his complaints regarding his fatigue and medication side effects. The ALJ found these complaints were not credible, however, and the Court has found this determination is supported by substantial evidence. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th

Cir. 1993); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."); *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is [ ] 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Date:   April 19, 2017           /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE